| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. KENDALL DYE, <br><br> Plaintiff, <br><br> v. <br><br> ATK LAUNCH SYSTEMS INC., <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR PROTECTIVE ORDER AND DENYING MOTION TO COMPEL** <br><br> Case No. 1:06-CV-00039-CW <br> District Judge Clark Waddoups <br><br> Magistrate Judge David Nuffer |

This order determines two motions on the same topic – a motion for protective order[1] to *prevent* a deposition and a cross-motion to *compel*[2] the deposition. Defendant ATK Launch Systems, Inc. (ATK) seeks a deposition under Fed. R. Civ. P. 30(b)(6) of a person knowledgeable about the decision by Plaintiff United States of America (United States) not to make repairs of the flares subject of this case.[3]

### Factual Background[4]

This case involves ATK-manufactured LUU-2 and LUU-19 flares configured with the TD102703 igniter. The flares are deployed by aircraft to provide nighttime visible light or near infrared illumination for covert, battlefield, or search and rescue operations.[5]

---

[1] United States' Motion for Rule 26(c) Protective Order, docket no. 195, filed October 25, 2010.

[2] Defendant ATK Launch Systems Inc. Cross Motion to Compel Production of Rule 30(b)(6) Witness, docket no. 211, filed November 9, 2010.

[3] *Id.*

[4] The factual background is taken nearly verbatim from the parties' memoranda on this and other motions.

[5] United States' Memorandum in Support of its Motion for Rule 26(c) Protective Order (USA Memorandum 196), docket no. 196, filed October 25, 2010.

Applicable specifications require that the flares be capable of withstanding a 10-foot drop without igniting to ensure that they are safe.[6] The flares burn at a temperature of in excess of 4000 degrees Fahrenheit, and once ignited cannot be easily extinguished, so an accidental ignition could be catastrophic, particularly if it occurs in the vicinity of other flares or other munitions.[7] In spite of the specification, the test was not performed in relation to the Government's purchase of flares from ATK in 2000.[8]

In August 2005, the Navy tested some LUU-19 flares to a more stringent 40-foot drop height requirement to determine whether the flares were safe for carrier-based aircraft. The Navy tests resulted in multiple unintended ignitions.[9] The, the Department of the Air Force refused to accept additional LUU-2 and LUU-19 flares because it had concerns about the capacity of those flares to withstand a drop.[10]

ATK and the United States worked together to improve the design of the igniter. ATK did not concede that the delivered flares were noncompliant with the contracts under which they had been supplied; it expressly reserved the question of any backward-looking contract liability for later.[11]

In 2005-2006, ATK modified the flare igniter, creating the "2006 Igniter," and implemented the Air Force-approved retrofit process to remove the old igniter from a LUU flare,

---

[6] United States' Memorandum in Support Of Motion to Compel Materials Improperly Withheld on the Basis of Privilege at 2 (USA Memorandum 218), docket no. 218, filed November 17, 2010; Relator's Memorandum in Support of United States' Opposition to ATK's Motion to Compel the Production of Flares for Destructive Testing at 3, docket no. 205, filed under seal November 2, 2010.

[7] *Id.*

[8] *Id.* at 4.

[9] USA Memorandum 218 at 2; USA Memorandum 196 at 1.

[10] Defendant ATK Launch Systems Inc.'s Opposition to United States' Motion for Rule 26(c) Protective Order and Memorandum in Support of Cross-Motion to Compel Production of Rule 30(b)(6) Witness (ATK Memorandum 212) at 3, docket no. 212, filed November 9, 2010.

[11] ATK Memorandum 212 at 3.

and to replace it with the 2006 Igniter.   In 2006, ATK employed that retrofit process to remove

the igniters from more than 5,000 LUU flares in ATK's inventory awaiting delivery, replace

them with 2006 Igniters, and deliver them to the Air Force.  The Air Force accepted the LUU

flares delivered with this retrofit.  That still left the United States with an inventory of more than

70,000 disputed flares that had already been delivered to the United States from 2000 to 2005, an

inventory that still exists today.[12]

On or around February 8, 2007 the United States sent ATK a document dated October 17,

2006 entitled "Statement of Objectives (SOO) for LUU-2 and LUU-19 Flare Rework."  The

United States drafted and sent the SOO at ATK's request.[13]

In February 2007, the Air Force solicited a proposal from ATK to retrofit the disputed

flares.  The Air Force did so through a formal solicitation known as a "Statement of

Objectives."[14]

On or around March 30, 2007, ATK provided the United States with a proposal to repair

the defective flares (the 2007 Retrofit Proposal).  Under the 2007 Retrofit Proposal, ATK would

charge the United States approximately $186 per flare to repair 50,000 LUU flares.[15]  ATK says

this price was a fraction of the original cost of the flares.[16]

The United States says it not responded to this proposal.[17]  ATK says the Air Force

silently rejected this proposal.[18]  The United States says this "is flatly wrong."[19]

---

[12] *Id.* at 3.

[13] USA Memorandum 196 at 1.

[14] ATK Memorandum 212 at 4.

[15] USA Memorandum 196 at 1-2.

[16] ATK Memorandum 212 at 4.

[17] USA Memorandum 196 at 1-2.

[18] ATK Memorandum 212 at 4.

On or around August 20, 2008, ATK provided the United States with a second proposal (the 2008 Retrofit Proposal). Under this second proposal, ATK would charge the United States approximately $92 per flare to repair 50,000 flares. [20]

By this time, ATK was aware of this litigation, and therefore made it clear that the retrofit proposal was a freestanding commercial offer that was not conditioned upon settling or compromising any claims in this litigation. That same year the United States used nearly 1,000 disputed flares.[21]

On March 5, 2009, the president of ATK Space Systems sent a letter to General Donald Hoffman, United States Air Force, requesting that the United States respond to the 2008 Retrofit Proposal. On April 7, 2009, Brigadier General Dwight Creasy, who is a lawyer and the United States Air Force Materiel Command Staff Judge Advocate, responded to ATK's letter and explained that "the Air Force is not inclined to negotiate a retrofit modification with ATK while the False Claims Act ('FCA') matter is pending. Rather, we believe it is in the best interests of the United States and ATK to consider a global settlement that resolves the FCA matter, and that addresses the need to retrofit the LUU flares."[22] ATK says the Air Force did not accept, nor even attempt to negotiate the 2008 Retrofit Proposal. [23]

### Deposition Request

On September 13, 2010, ATK provided to the United States a list of topics for which it would be requesting that the United States produce a witness to testify pursuant to Federal Rule

---

[19] United States' Reply in Support of Its Motion for Rule 26(c) Protective Order at 2, docket no. 231, filed November 24, 2010.

[20] USA Memorandum 196 at 2.

[21] ATK Memorandum 212 at 4, citing March 5, 2009 Letter, attached to ATK Memorandum 212 as Exhibit E.

[22] USA Memorandum 196 at 2, citing April 7, 2009 Letter, attached to USA Memorandum 196 as Exhibit C.

[23] ATK Memorandum 212 at 4.

of Civil Procedure 30(b)(6) (the Request).[24]  The Request listed five topics, only two of which

(the fourth and fifth) are the subject of this dispute.  The fourth and fifth topics relate to the

Retrofit Proposals:

> 4. Information concerning Your consideration of and/or response to ATK's
> response to the SOO on or around March 30, 2007 (the "2007 Retrofit
> Proposal") . . . .

> 5. Information concerning Your consideration of and/or response to ATK's
> response to the SOO on or around August 20, 2008 (the "2008 Retrofit
> Proposal") . . . .[25]

Detail was also sought, such as names of persons responsible for making the decision; the

process by which those persons analyzed the Retrofit Proposals (including the considerations for

and against accepting the proposal); and the basis for the decision not to accept the proposal.[26]

### Issues on the Motion

The United States resists the 30(b)(6) deposition for two reasons:

1. "the matters upon which ATK seeks a 30(b)(6) deponent are protected by the
   attorney-client and deliberative process privileges," and

2. "to the limited extent that they are not, the requests are duplicative of information and
   materials provided in response to previous discovery requests."[27]

---

[24] Email, Jennifer Giordano to Jessica Champa and others (September 13, 2010), attached as Exhibit I to USA
Memorandum 196.

[25] *Id.*

[26] *Id.*

[27] USA Memorandum 196 at 1.

## DISCUSSION

ATK says it NEEDS the deposition to find out why "the Government solicit[ed] ATK's proposal to retrofit the inventoried flares with undisputedly compliant 2006 Igniters, and then reject[ed] two such proposals without even discussing them with ATK."[28] "ATK is entitled to discover, and develop evidence of, the ground(s) on which the Government made its decision."[29] But the information ATK seeks is classic deliberative process information, protected by privilege.

The deliberative process privilege protects information which is deliberative in nature assembled by an agency before its decision. The deliberative process privilege "seeks to protect the integrity of governmental decision making" and "rests on the obvious conclusion that officials will not communicate candidly and frankly if each remark may end up as 'front page news.'"[30]

> A document is "pre-decisional" if it was prepared to assist an agency decision maker in arriving at a decision [and] is "deliberative" if it relates to the formulation of agency policy. The deliberative process privilege extends to recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. [31]

If there is reasoning released with or following a decision, then the deliberative process privilege will not prevent discovery of that information. The deliberative process privilege distinguishes between "predecisional memoranda prepared in order to assist an agency

---

[28] ATK Memorandum 212 at 4.

[29] *Id* at 8.

[30] *Utah Med. Prod. v. McClellan,* No. 2:03-CV-00525 PGC, 2004 WL 988877, at *2 (D. Utah March 31, 2004) (unpublished) (citations and some quotation marks omitted)

[31] *Id.*

decisionmaker in arriving at his decision, which are exempt from disclosure, and postdecisional memoranda setting forth the reasons for an agency decision already made, which are not."[32]

Here, the only decision which has been made is represented by the April 2009 letter which states that the United States prefers to negotiate a global agreement including settlement of this case with the retrofit of the flare inventory. [33]

ATK says it needs information about the United States' rationale because it is "directly relevant to the measure of damages in this case."[34] "[T]he measure of damages is, at most, the cost of repairing the product. . . . But in some circumstances, the cost of repairing the alleged defect may be an unreasonably high measure of damages if it is clearly disproportionate to the probable loss in value caused by the defects."[35]

The offer ATK made to make the repair has some bearing on the cost of repair. But the United States' decision *not to repair* at this time because of the pending litigation is not proof of the cost of repair. ATK says that "if the Government rejected ATK's proposals because the costs of retrofit outweighed the loss in value associated with the condition of the igniters, it is relevant to show that any damages may be lower than the cost of retrofit."[36] ATK's speculation ignores the plain statement of the April 2009 letter that states the reason the Retrofit Proposals have not been accepted.

ATK amplifies its desire to get into the reasoning behind the United States' response to the Retrofit Offers.

---

[32] *Renegotiation Bd. v. Grumman Aircraft Eng. Corp.*, 421 U.S. 168, 184 (1975).

[33] USA Memorandum 196 at 2, citing letter April 7, 2009, attached to 196 as Exhibit C.

[34] ATK Memorandum 212 at 4 (citations and quotations omitted).

[35] *Id.* at 5.

[36] *Id.*

But if the Government had other independent reasons for rejecting the proposals, then ATK is entitled to explore those reasons at the deposition. On the other hand, if the proposals were rejected solely on privileged grounds of litigation strategy, then ATK is entitled to evidence of such fact, which would help ATK prove both that its retrofit proposals were sound, and that there was no military necessity to "improve" the subject flares . . . .[37]

Under Rule 26(c), a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[38] Any inquiry beyond the face of the April 2009 letter is "undue" because the letter is clear, and the deliberative process privilege prevents further inquiry into the United States' decision making.

**ORDER**

IT IS HEREBY ORDERED that the motion for protective order[39] is GRANTED and the motion to compel[40] is DENIED.

Dated January 6, 2011.

BY THE COURT:

David Nuffer
U.S. Magistrate Judge

---

[37] *Id.* at 6.

[38] Fed. R. Civ. P. 26(c).

[39] United States' Motion for Rule 26(c) Protective Order, docket no. 195, filed October 25, 2010.

[40] Defendant ATK Launch Systems Inc. Motion to Compel Production of Rule 30(b)(6) Witness, docket no. 211, filed November 9, 2010.