IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. KENDALL DYE, <br><br> Plaintiff, <br><br> v. <br><br> ATK LAUNCH SYSTEMS INC., <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTIONS TO COMPEL [217] AND [224]** <br><br> ~~FILED UNDER SEAL~~    **REDACTED** <br> Case No. 1:06-CV-00039-CW    This is a redacted version of an order filed under seal. <br><br> District Judge Clark Waddoups <br> Magistrate Judge David Nuffer |

This order determines two motions—one from the United States (Government)[1] and the other from Relator Kendall Dye (Dye)[2]—to compel discovery of materials which they claim defendant ATK Launch Systems Inc. (ATK) improperly withheld on the basis of privilege.

**General Factual Background[3]**

This case involves ATK-manufactured LUU-2 and LUU-19 flares configured with the TD102703 igniter that ATK delivered to the United States Air Force from 2000 to 2005.[4] The flares are deployed by aircraft to provide nighttime visible light or near infrared illumination for covert, battlefield, or search and rescue operations.[5]

---

[1] United States' Motion to Compel Materials Improperly Withheld on the Basis of Privilege (USA Motion 217), docket no. 217, filed November 17, 2010; *see also* United States' Memorandum in Support of Motion to Compel Materials Improperly Withheld on the Basis of Privilege (USA Memorandum 218), docket no. 218, filed November 17, 2010.

[2] Relator's Motion to Compel Production of Document(s) Improperly Withheld on the Basis of Privilege (Dye Motion 224), docket no. 224, filed November 18, 2010; *see also* Relator's Memorandum in Support of Government's and Relator's Motions to Compel Materials Improperly Withheld on the Basis of Privilege (Dye Memorandum 227), docket no. 227, filed under seal November 18, 2010.

[3] The factual background is taken from the parties' memoranda on these and previous motions.

[4] Defendant ATK Launch Systems Inc.'s Memorandum in Support of Motion to Compel Discovery from the United States of America in Response to Document Requests 41-43 at 2, docket no. 128, filed September 17, 2009.

[5] United States' Memorandum in Support of its Motion for Rule 26(c) Protective Order (USA Memorandum 196), docket no. 196, filed October 25, 2010.

Applicable safety specifications require that the flares be capable, under specified circumstances, of withstanding a 10-foot drop without igniting.[6] The flares burn at a temperature in excess of 4000 degrees Fahrenheit and once ignited cannot be easily extinguished, so an accidental ignition could be catastrophic, particularly if it occurs in the vicinity of other flares or munitions.[7] In spite of the specification, the test was not performed in relation to the Government's purchase of flares from ATK in 2000.[8]

In August 2005, the Navy tested some LUU-19 flares to a more stringent 40-foot drop height requirement to determine whether the flares were safe for carrier-based aircraft. The Navy tests resulted in multiple unintended ignitions.[9] Thus, the Air Force refused to accept additional LUU-19 flares because it had concerns about the capacity of those flares to withstand a drop.[10] ATK and the United States worked together to improve the design of the igniter. ATK did not concede that the delivered flares were noncompliant with the contracts under which they had been supplied; it expressly reserved the question of any backward-looking contract liability.[11]

In 2005-2006, ATK modified the flare igniter, creating the "2006 Igniter," and implemented the Air Force-approved retrofit process to remove the old igniter from the LUU flares and replace the igniter with the 2006 Igniter. In 2006, ATK employed that retrofit process to remove the igniters from more than 5,000 LUU flares in ATK's inventory awaiting delivery, replace them with 2006 Igniters, and deliver them to the Air Force. The Air Force accepted the LUU flares delivered with

---

[6] USA Memorandum 218 at 2; Relator's Memorandum in Support of United States' Opposition to ATK's Motion to Compel the Production of Flares for Destructive Testing at 3 (Dye Memorandum 205), docket no. 205, filed under seal November 2, 2010.

[7] *Id.*

[8] *Id.* at 4.

[9] *Id.* at 2; USA Memorandum 196 at 1.

[10] Defendant ATK Launch Systems Inc.'s Opposition to United States' Motion for Rule 26(c) Protective Order and Memorandum in Support of Cross-Motion to Compel Production of Rule 30(b)(6) Witness (ATK Memorandum 212) at 3, docket no. 212, filed November 9, 2010.

[11] ATK Memorandum 212 at 3.

this retrofit. That still left the Government with an inventory of more than 70,000 disputed flares that had already been delivered to the Government from 2000 to 2005.[12] Much of that inventory still exists today, although the Government has since used nearly 1,000 of the disputed flares.[13]

In February 2007, the Air Force solicited a proposal from ATK to retrofit the disputed flares through a formal solicitation known as a "Statement of Objectives."[14] On or around March 30, 2007, ATK provided the Government with a proposal to repair the defective flares (the 2007 Retrofit Proposal). Under the 2007 Retrofit Proposal, ATK would charge the Government approximately $186 per flare to repair 50,000 LUU flares.[15] ATK says this price was a fraction of the original cost of the flares.[16] The Government says it has not responded to this proposal.[17] ATK says the Air Force silently rejected this proposal.[18] The United States says this "is flatly wrong."[19]

On or around August 20, 2008, ATK provided the Government with a second proposal (the 2008 Retrofit Proposal). Under this second proposal, ATK would charge the Government approximately $92 per flare to repair 50,000 flares.[20] By this time, ATK was aware of this litigation and therefore made it clear that the retrofit proposal was a freestanding commercial offer that was not conditioned upon settling or compromising any claims in this litigation. On March 5, 2009, the president of ATK Space Systems sent a letter to General Donald Hoffman, United States Air Force, requesting that the Government respond to the 2008 Retrofit Proposal. On April 7, 2009, Brigadier

---

[12] *Id.*

[13] *Id.* at 3-4, citing March 5, 2009 Letter, attached to ATK Memorandum 212 as Exhibit E.

[14] ATK Memorandum 212 at 4.

[15] USA Memorandum 196 at 1-2.

[16] ATK Memorandum 212 at 4.

[17] USA Memorandum 196 at 1-2.

[18] ATK Memorandum 212 at 4.

[19] United States' Reply in Support of Its Motion for Rule 26(c) Protective Order at 2, docket no. 231, filed November 24, 2010.

[20] USA Memorandum 196 at 2.

General Dwight Creasy, who is a lawyer and the United States Air Force Materiel Command Staff Judge Advocate, responded to ATK's letter and explained the following:

> [T]he Air Force is not inclined to negotiate a retrofit modification with ATK while the False Claims Act ('FCA') matter is pending. Rather, we believe it is in the best interests of the Government and ATK to consider a global settlement that resolves the FCA matter, and that addresses the need to retrofit the LUU flares.[21]

ATK says the Air Force did not accept, nor even attempt to negotiate, the 2008 Retrofit Proposal.[22]

### Factual Background to Discovery Dispute

The current dispute revolves around certain documents that ATK withheld from discovery on the basis of privilege.[23] The Government and Relator now ask this Court to compel discovery of these documents, claiming that neither the attorney-client privilege nor work product doctrine protects thematerials from discovery.[24] Specifically, the Government requests three sets of PowerPoint presentations and the results of a 2007 drop test of the igniter.[25] The Relator requests a copy of an email sent by ATK's then in-house Counsel which ATK inadvertently produced during initial discovery.[26]

### Background to the Government's Request

In response to the Navy's August 2005 test of the LUU flares, ATK conducted its own investigation in November 2005 which, in part, led to the development of the 2006 Igniter discussed above.[27] Also in November 2005, ATK contracts manager Paul Wecker produced a PowerPoint as part of a contracts inquiry that was parallel to, but separate from, ATK's 2005 engineer

---

[21] *Id.*, citing April 7, 2009 Letter, attached to USA Memorandum 196 as Exhibit C.

[22] ATK memorandum 212 at 4.

[23] USA Motion 217 at 2; Dye Motion 224 at 2.

[24] USA Motion 217 at 2; Dye Motion 224 at 2.

[25] USA Motion 217 at 2.

[26] Dye Motion 224 at 2.

investigation.[28] Wecker's PowerPoint later became part of a presentation to ATK's senior management.[29] While ATK's in-house counsel did not participate in the creation of Wecker's PowerPoint,[30] ATK claims the purpose of the PowerPoint was to "identify topics" on which to seek legal advice.[31] When ATK turned over Wecker's PowerPoint in initial discovery, ATK redacted three slides that identified legal topics.[32] The redacted slides, referred to here as the "Wecker Slides," are designated as Documents 45-49 on ATK's privilege log.[33]

According to ATK, Mr. Davidson, the employee in charge of the parallel contract and engineer investigations, then created two additional PowerPoint presentations that also contained privileged information.[34] The first additional presentation, referred to as the "Davidson Slides," was created November 14, 2005 with the purpose of bringing senior management up to speed on the legal topics for which ATK would seek advice from its then in-house counsel, Mr. Bell.[35] The Davidson Slides evidently incorporated the Wecker Slides, which ATK again redacted and identified as Documents 50-65 on its privilege log.[36] Mr. Bell received a copy of the Davidson Slides around November 14[37] and evidently became involved in the discussion of these presentations for the first

---

[27] USA Memorandum 218 at 2; Defendant ATK Launch Systems Inc.'s Consolidated Memorandum in Opposition to United States' and Relator's Motions to Compel Materials Withheld on the Basis of Privilege at 3 (ATK Memorandum 238), docket no. 238, filed under seal December 6, 2010.

[28] ATK Memorandum 238 at 3-4; *see also* USA Memorandum 218 at 3.

[29] ATK Memorandum 238 at 5.

[30] *Id.* at 4, 5.

[31] *Id.* at 4; United States' Reply in Support of its Motion to Compel Documents Improperly Withheld on the Basis of Privilege at 2 (USA Memorandum 250), docket no. 250, filed under seal December 23, 2010.

[32] ATK Memorandum 238 at 4; USA Memorandum 250 at 1.

[33] ATK Memorandum 238 at 4; USA Memorandum 250 at 1.

[34] ATK Memorandum 238 at 4, 6; USA Memorandum 250 at 2.

[35] ATK Memorandum 238 at 5; USA Memorandum 250 at 2, 6.

[36] ATK Memorandum 238 at 5. USA Memorandum 250 at 2.

[37] ATK Memorandum 238 at 5.

time.[38] Mr. Davidson then created a second additional PowerPoint presentation for a meeting on November 28, 2005 that included Mr. Bell and senior management.[39] Mr. Davidson used the presentation to raise and discuss legal issues.[40] ATK asserts that the November 28 presentation, identified as Documents 67-78 and 80-83 on ATK's privilege log, was not a version of the Wecker or Davidson Slides.[41]

Two years later, on November 12, 2007, ATK conducted additional "drop tests" on the flare igniter.[42] ATK claims the information pertaining to these tests is privileged because the tests were conducted at the direction of outside counsel for the sole purpose of preparing for litigation.[43] These materials are identified as Documents 244 and 288-290 on ATK's privilege log.[44]

### The Government's Requests

The Government now requests access to the Wecker Slides, the Davidson Slides, the November 28 presentation, and the 2007 drop test materials. The Government argues that the Wecker and Davidson Slides are not protected under the attorney-client privilege or work product doctrine,[45] although ATK now concedes that the work product doctrine does not apply because the slides were not prepared at counsel's direction.[46] The Government contends that ATK created these presentations for a business purpose and without counsel's knowledge or participation.[47] Likewise, the Government claims that the November 28 Presentation is not protected under either privilege

---

[38] *See id.* at 6; *see also* Dye Memorandum 227 at 6.

[39] ATK Memorandum 238 at 6; *see also* USA Memorandum 250 at 7.

[40] *Id.*

[41] *Id.*; USA Memorandum 250 at 6, 7.

[42] ATK Memorandum 238 at 8; USA Memorandum 218 at 4.

[43] ATK Memorandum 238 at 8; USA Memorandum 218 at 4.

[44] ATK Memorandum 238 at 8.

[45] USA Memorandum 250 at 3-4.

[46] ATK Memorandum 238 at 9 n.33.

because it was nothing more an update on the 2005 investigation.[48] Finally, the Government contends that the 2007 drop test materials are not privileged because they represent "classic examples of underlying facts that are not protected."[49] The Government also says it has a substantial need for the drop test materials, which it cannot obtain separately without undue hardship.[50]

### Background to Relator's Request for an Email

When ATK's then in-house counsel, Mr. Bell, reviewed the PowerPoint presentation of November 14, 2005 (the Davidson Slides), he believed they contained privileged information and emailed (Bell Email) certain ATK employees on November 16, 2005 with instructions for handling the privileged slides.[51] According to ATK, these instructions were "proper" legal advice and therefore privileged.[52] ATK inadvertently produced this email to the Government during initial discovery.[53] The Government notified ATK about the disclosure, and ATK asserted that the email is privileged.[54]

The Relator disagrees with ATK's characterization of the Bell Email as privileged legal advice.[55] ███████████████████████████████████████████████
███████████████████████████████████████████ ██████
███████████████████████████████████████ ██████████

---

[47] USA Memorandum 250 3-4.

[48] *Id.* at 6.

[49] USA Memorandum 218 at 10-11.

[50] *Id.* at 12-13.

[51] ATK Memorandum 238 at 5; Dye Memorandum 227 at 3.

[52] ATK Memorandum 238 at 5-6.

[53] Dye Memorandum 227 at 3.

[54] *Id.* at 4.

[55] *Id.* at 8.

[56] *Id.*

[57] *Id.*

7

██████████████████████████████████████████████████████████

████████████████████████████████████████████████

## DISCUSSION

The attorney-client privilege protects a client's communication of information to his attorney for the purpose of receiving "sound and informed" legal advice.[59] Both parties here rely on *Adams v. Gateway, Inc.*[60] for the following definition of the scope of the privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.[61]

This standard protects "communications to and from attorneys in furtherance of obtaining advice" and also protects "opinions, advice, and direct communications to facilitate opinions and advice."[62] The privilege does not, however, protect "underlying or independent facts."[63] The party asserting the privilege has the burden of establishing that it applies.[64]

The work product privilege, as described in *Hickman v. Taylor*,[65] protects the following:

> (1) documents and tangible things prepared in anticipation of litigation or for trial, (2) by or for another party or his representative, (3) unless the party seeking discovery can show both a substantial need for the materials, and that he is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means.[66]

---

[58] *Id.* at 9, 11.

[59] *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981).

[60] No. 2:02-CV-106, 2003 WL 23787856 (D. Utah Dec. 30, 2003).

[61] *Id.* at *5 (citing 8 John Henry Wigmore, *Evidence*, § 2292 (McNaughton rev. 1961)).

[62] *Id.* at *8.

[63] *Id.*

[64] *In re Grand Jury Subpoenas (Roe and Doe)*, 144 F.3d 653, 658 (10th Cir. 1998) (citations omitted).

[65] 329 U.S. 495 (1947).

[66] *Adams*, 2003 WL 23787856, at *5 (citing Fed. R. Civ. P. 26(b)(3)).

Furthermore, work product consists of "[s]ubject matter that relates to the preparation, strategy, and appraisal of the strengths and weaknesses of an action, or to the activities of the attorneys involved, rather than to the underlying evidence."[67] The party asserting this privilege has the burden to show that it applies.[68] With these basic principles in mind, the magistrate judge turns to the issues in this case.

### The Wecker and Davidson Slides

ATK agrees that the Wecker and Davidson Slides were not prepared at the direction of counsel, so the work product doctrine does not apply.[69] Mr. Bell, as ATK's then in-house counsel, evidently did not become involved until receiving a copy of the Davidson Slides on around November 14, 2005.[70] For purposes of the attorney-client privilege, however, the parties disagree about whether the slides are merely a product of ATK's engineers' investigation in 2005,[71] or whether there in fact existed a parallel project aimed at obtaining legal advice.[72]

The attorney-client privilege "should attach only where extending its protection would foster more forthright and complete communication between the attorney and her client *about the client's legal dilemma*."[73] Under this rationale, courts have recognized a need to protect a "communication between nonlegal employees in which an employee discusses her intent to seek legal advice about a particular issue."[74] Thus, the only question here is whether the Wecker and

---

[67] *In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989*, 133 F.R.D. 515, 519 (N.D. Ill. 1990) (quoting 4 *Moore's Federal Practice* ¶ 26.64[1] (1989)).

[68] *In re Grand Jury Subpoenas*, 144 F.3d at 658.

[69] ATK Memorandum 238 at 9 n.33.

[70] *See id.*; *see also id.* at 5.

[71] USA Memorandum 250 3-4.

[72] ATK Memorandum 238 at 4.

[73] *United States v. Chevron Texaco Corp.*, 241 F.Supp.2d 1065, 1070 (N.D. Cal. 2002).

[74] *Id.*

9

Davidson Slides reflect an intention to seek legal advice. After an in camera review,[75] the Court finds that the slides were in fact created for the purpose of seeking Mr. Bell's legal advice and are therefore privileged as attorney client communication. They contain preliminary assessment of legal issues, as well as factual information designed to lay groundwork for Bell's advice. They were prepared very close in time to the November 28 meeting where Bell and senior management discussed legal issues. They do not appear to have independent facts not available elsewhere in the record. The Wecker and Davidson slides may have been prepared by non-lawyers, but they were clearly focused on liability issues and contract law.

### The November 28 Presentation

The parties' disagree whether ATK created the November 28 Presentation separately from the Wecker and Davidson Slides and at the direction of counsel to facilitate discussion of legal issues, as ATK contends;[76] or whether it is just another version of the Wecker and Davidson Slides later presented to Mr. Bell, as the Government asserts.[77] Even if the communications involve counsel, there must be "a 'clear showing' that the 'speaker' made the communications for the purpose of obtaining or providing legal advice."[78] "The privilege does not protect an attorney's business advice."[79] Similar to the Wecker and Davidson Slides, then, the question here concerns whether the November 28 Presentation included legal advice or was prepared to obtain legal advice. A review of the presentation and the context of its creation reveal that the primary purpose of the presentation was to lay groundwork for discussion of legal

---

[75] Docket Text Order taking under advisement 217 Motion to Compel, docket no. 258, filed January 4, 2011. The presentation slides were provided for in camera review on December 6, 2010. Letter, Michael L. Larsen dated December 6, 2010, docket no. 292, lodged March 9, 2010.

[76] ATK Memorandum 238 at 6.

[77] USA Memorandum 218 at 9.

[78] *Chevron*, 241 F.Supp.2d at 1076.

[79] *Id.*

issues, including contract terms and obligations. Therefore, the November 28 Presentation is privileged as attorney client communication.

## 2007 Drop Test

ATK claims the work product doctrine applies to protect the 2007 drop tests from discovery.[80] Under the work product doctrine, ATK must show that the drop test materials were prepared in anticipation of litigation.[81] The ultimate question is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared . . . because of the *prospect* of litigation."[82] Courts have recognized that "studies or tests conducted after a party is aware of potential litigation . . . [are] within the scope of the work product immunity doctrine."[83] The drop test materials were provided for in camera review on January 7, 2011.[84]

Under these standards, the drop test materials are clearly protected as work product. In fall 2007, ATK's then-outside counsel, Mr. Christo, "directed ATK employees to develop a test plan for drop tests," which occurred on November 12, 2007.[85] By this time, the Government had already filed its complaint and served ATK with a subpoena *duces tecum*.[86] ATK not only faced the prospect of litigation but was engaged in it. The Government does not dispute this timeline but rather asserts that the drop tests constitute underlying facts to which the privilege does not

---

[80] *See* USA Memorandum 218 at 10; ATK Memorandum 238 at 13.

[81] *Martin v. Monfort, Inc.*, 150 F.R.D. 172, 172 (D. Colo. 1993).

[82] *Id.* at 173 (citations and quotations omitted).

[83] *Id.* (citing *In re Air Crash Disaster at Detroit metropolitan Airport*, 130 F.R.D. 641, 644 (E.D. Mich. 1989); *Interstate Production Credit Ass'n v. Fireman's Fund Ins. Co.*, 128 F.R.D. 273 (D. Or. 1989)).

[84] Letter, Michael L. Larsen dated January 7, 2011, docket no. 292, lodged March 9, 2010.

[85] ATK Memorandum 238 at 8.

[86] *Id.*

attach.[87]  However, even tests which generate factual data —when conducted at the direction of counsel and in preparation for litigation—are "strongly indicative of the mental impressions, conclusions, opinions, or legal theories" of ATK's attorneys.[88]  Thus, the 2007 drop test materials are protected by the work product doctrine.

The Government also contends that, even if the work product doctrine applies, ATK should be required to produce the test information because the Government has a substantial need for the drop test materials and cannot conduct its own tests without undue hardship.[89]  The magistrate judge disagrees.  The Government has at its disposal an inventory of around 70,000 disputed flares.[90]  There is no reason the Government cannot perform its own tests.  Such testing would not be an undue hardship.

### The Bell Email

Finally, there is an issue as to whether the attorney-client privilege protects the Bell Email.  Relator maintains that Mr. Bell's direction to ATK employees concerning the Davidson Slides was not legal advice.[91]  ███████████████████████████████████████████████████████████████████████████████████████████████████████████████  The Bell Email was legal advice because in it Mr. Bell advises ATK employees how to handle privileged materials.  As such, the email is protected by the attorney-client privilege.  ████████████████████████████████████████

---

[87] USA Memorandum 218 at 11.

[88] *Vardon Golf Co. v. BBMG Golf*, 156 F.R.D. 641, 648 (N.D. Ill. 1994).

[89] USA Memorandum 218 at 15.

[90] ATK Memorandum 212 at 3.

[91] Dye Memorandum 227 at 8.

[92] *Id.* at 11; ATK Memorandum 238 at 17.

12

████████████████████████████████████ ████████████████████
████████████

**Conclusion**

The Government and Relator's motions[94] to compel discovery of materials improperly withheld on the basis of privilege are DENIED.

Dated March 9, 2011.

BY THE COURT:

_____
David Nuffer
U.S. Magistrate Judge

---

[93] The Bell Email was provided for in camera review on December 6, 2010. Letter, Michael L. Larsen dated December 6, 2010, docket no. 292, lodged March 9, 2010. The presentation slides were provided for in camera review on January 7, 2011. Letter, Michael L. Larsen dated January 7, 2011, docket no. 292, lodged March 9, 2010.

[94] USA Motion 217; Dye Motion 224.